UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEVERLY ANN COLVIN,<br><br>        Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>        Defendant. | No. CV 14-4502-AGR<br><br>MEMORANDUM OPINION AND ORDER |

      Plaintiff Beverly Ann Colvin filed this action on June 11, 2014. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 9, 17.) On March 26, 2015, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

      Having reviewed the entire file, the court affirms the decision of the Commissioner.

# I.

# PROCEDURAL BACKGROUND

On October 18, 2011, Colvin filed an application for disability insurance benefits, alleging an onset date of September 17, 2011.[1]  AR 161-62.  The application was denied initially and on reconsideration.  AR 22, 110-12.  Colvin requested a hearing before an ALJ.  AR 123-24.  On February 12, 2013, the ALJ conducted a hearing at which Colvin and a vocational expert ("VE") testified.  AR 46-58.  On February 22, 2013, the ALJ issued a decision denying benefits.  AR 19-34.  On April 25, 2014, the Appeals Council denied the request for review.  AR 1-5.  This action followed.

# II.

# STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

---

[1]  Colvin previously filed an application for disability insurance benefits on May 25, 2010, alleging an onset date of April 6, 2009.  Administrative Record ("AR") 90.  An Administrative Law Judge ("ALJ") issued a decision denying benefits on September 16, 2011.  AR 90-94.  Colvin did not appeal the decision.

# III.

# DISCUSSION

## A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and quotation marks omitted).

## B. The ALJ's Findings

Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[2] the ALJ found that Colvin has the severe impairments of plantar fasciitis in both feet, carpal tunnel syndrome in both wrists, diabetes, hypertension, arthritis and chronic depression. AR 24. Her impairments do not meet or equal a listing. AR 24.

The ALJ found that Colvin has the residual functional capacity ("RFC") to perform the full range of light to medium work. She can lift or carry 25 pounds frequently and 50 pounds occasionally; and sit, stand and walk six hours in an eight-hour workday. She can understand and remember tasks, sustain concentration and persistence, socially interact with the general public, co-workers and supervisors, and adapt to work place changes frequently enough to perform unskilled low stress work that requires simple instructions. AR 27. She is unable to perform any past relevant work, but there are

---

[2] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

jobs that exist in the national economy that she can perform such as night cleaner, laundry laborer, storage facility clerk and survey worker. AR 33-34.

### C. State Agency Physician's Opinion

Colvin contends the ALJ erred in evaluating the opinion of Dr. Moore, a State Agency medical consultant. Colvin argues the ALJ erroneously failed to include in the RFC the postural and manipulative limitations assessed by Dr. Moore.

Dr. Moore opined that Colvin could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand, walk or sit about six hours in an eight-hour workday, and was limited in the ability to push and/or pull in the upper extremities. AR 242. Colvin could occasionally climb, balance, stoop, kneel, crouch and crawl due to low back and heel pain. AR 243. She was limited in fingering (fine manipulation) due to carpal tunnel syndrome. AR 244. Dr. Moore based his conclusions on Dr. Popov's December 30, 2010 internal consultative examination. AR 231-236, 242-44.

The ALJ gave "substantial weight" to the physical assessments of the State Agency medical consultants, the consultative examiners and a treating physician. AR 29-33, 209-16, 231-36, 241-48, 533-38. The State Agency medical consultants and the consultative examiners opined that Colvin could perform a range of medium work. AR 212-16, 231-36, 241-48, 533-38.[3]

"'The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician.'" *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1202 (9th Cir. 2008) (citation omitted) (emphasis in original). However, a non-examining physician's opinion may serve as substantial evidence when it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035,

---

[3] The treating physician did not make any contrary findings. The physician treated Colvin for bilateral plantar fasciitis and bilateral achilles tendonitis prior to the alleged onset date, and found only intermittent swelling and tenderness in the ankle, with no abnormalities in range of motion, sensation, reflex, or motor. AR 209-11.

4

1041 (9th Cir. 1995); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Here, the ALJ found the State Agency medical opinions "consistent with the record as discussed [in the opinion]." AR 33.

Regarding Dr. Moore's limitation to occasional climbing, balancing, stooping, kneeling, crouching, and crawling, the ALJ noted that Dr. Moazzaz, a consultative examiner, found that Colvin could squat, heel walk and toe walk, had full strength and reflexes in her upper and lower extremities, and could frequently climb, stoop, kneel, and crouch. AR 30, 213-16. Dr. Xiao, Colvin's treating physician, found that Colvin had full range of motion in her ankles and normal flexion, extension, abduction, adduction, sensation, reflex, and motor, with no muscular contractions or atrophy. AR 29, 209. The ALJ noted that Dr. Popov found that Colvin was limited to occasional climbing, stooping, kneeling and crouching due to low back and heel pain. AR 32, 236. On the other hand, Dr. Sourehnissani found full range of motion in the lumbar spine, with discomfort, no tenderness to palpation in the midline or paraspinal areas, some paraspinal muscle spasm, no kyphosis or scoliosis, negative straight-leg-raising, no swelling or erythema in the ankles, grossly normal range of motion in the ankles, and some discomfort on the plantar surfaces of the feet. AR 32, 535-36. Dr. Sourehnissani limited Colvin to medium work with no postural limitations. AR 537.

It is the ALJ's province to resolve conflicts in the medical record. Moreover, any error would be harmless. The survey worker position does not require climbing, balancing, stooping, kneeling, crouching or crawling. 1991 WL 671725.

Regarding Dr. Moore's push/pull and fingering limitations due to carpal tunnel syndrome, the ALJ discussed relevant evidence. AR 29. An August 18, 2011 examination indicated normal inspection of the upper extremity with normal range of motion and no sign of cyanosis, clubbing, edema, focal motor deficits or focal sensory deficits. AR 29, 329. The ALJ noted that other examinations showed Colvin had negative Tinel's sign and Phalen's test, intact finger approximation, no Heberden's or

Bouchard's nodes noted, and no tenderness in the MCP or IP joints. AR 29, 214, 536. On August 20, 2011, Colvin complained of "9/10" pain in her arms due to carpal tunnel syndrome, but was "a lot better" with Vicodin. AR 368. An October 5, 2011 clinical report noted no peripheral edema. AR 517. Colvin drove to her consultative evaluation on February 11, 2012. AR 539. Drs. Moazzaz and Sourehnissani found no push/pull or fingering limitations. AR 30, 32, 216, 537. Substantial evidence supports the ALJ's discussion of the record and omission of Dr. Moore's push/pull and fingering limitations. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1981).

### D. "Other Source" Evidence

Colvin contends that the ALJ failed to consider the evidence in Exhibit B23F, which shows "the United States Postal Service had adjudicated [her] to be disabled due to her foot impairments," and supports her reports of pain. JS 9-10.

Exhibit B23F includes a letter to Colvin, dated September 8, 2011, from the United States Office of Personnel Management ("OPM"), and medical records from Harbor-UCLA Medical Center. AR 569-79. The letter, in its entirety, states the following:

> Our records show that you claim you were disabled due to bilateral lower extremities with Achilles tendinitis and plantar fasciitis and bilateral upper extremities carpal tunnel syndrome. However, in reviewing your medical records we have found you to be disabled for your position as a Mail Handler, due to bilateral plantar fasciitis and Achilles tendinitis *only*.

AR 569 (emphasis in original). The Harbor-UCLA medical records show that Colvin went to the emergency department on February 11, 2013 with complaints relating to high blood pressure and not having medication for months due to her finances. AR 572. Colvin was given a medication refill and was stable when sent home that day. *Id.*

Although it is unclear whether Colvin proffered Exhibit 23F at the hearing before the ALJ,[4] the Appeals Council made Exhibit B23F part of the record. AR 5. The reviewing court's role is "to determine whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence and was free of legal error." *Taylor v. Comm'r*, 659 F.3d 1228, 1232 (9th Cir. 2011). The reviewing court considers both the ALJ's decision and the additional material submitted to the Appeals Council. *Brewes v. Comm'r*, 682 F.3d 1157, 1163 (9th Cir. 2012).

The September 2011 letter indicates that the OPM rejected Colvin's claim that she was disabled due to bilateral upper extremities carpal tunnel syndrome. AR 569. OPM's finding that Colvin was disabled for her position as a mail handler due to bilateral plantar fasciitis and Achilles tendinitis is consistent with the ALJ's finding that Colvin was unable to perform past relevant work, including her work as a mail handler. AR 33. The criteria used by OPM for determining disability for a mail handler position is not binding or relevant as to whether Colvin is disabled under the Social Security Act. The existence of a disability "is an administrative determination of how an impairment, in relation to education, age, technological, economic, and social factors, affects ability to engage in gainful activity," and is reserved to the Commissioner. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011).

With respect to the Harbor-UCLA records, Colvin argues that such records support her reports of pain in her feet, thereby warranting the need for a cane. Colvin points to no specific references in the Harbor-UCLA records that corroborate her reports of pain in her feet, and the court can find none. The Harbor-UCLA records focus on Colvin's complaints relating to her high blood pressure and running out of medication.

---

[4] Colvin argued to the Appeals Council that she proffered documentation from her employer at the hearing. AR 568. At the hearing, the ALJ marked exhibits through B22F, and stated "then you filed some additional things to do." AR 48. After Colvin's attorney objected to an exhibit on the basis that the examiner was board-eligible rather than board-certified, the ALJ stated that he would "admit all those into evidence and make them part of the record." *Id.*

AR 570-79.  Further, the ALJ found that Colvin did not have disabling foot limitations.[5]
He noted evidence that Colvin did not need an assistive device to ambulate.  AR 30-32, 216, 235, 536.

The ALJ's decision is supported by substantial evidence.

### E.     Step Five of the Sequential Analysis

Colvin contends the ALJ erred at Step Five because the positions of storage facility clerk and survey worker are inconsistent with the Dictionary of Occupational Titles ("DOT")[6] and the ALJ failed to explain how he resolved the conflict.

At step five, the Commissioner bears the burden of demonstrating there is other work in significant numbers in the national economy the claimant can do.  *Lounsburry*, 468 F.3d at 1114.  If the Commissioner satisfies this burden, the claimant is not disabled and not entitled to disability benefits.  If the Commissioner cannot meet this burden, the claimant is disabled and entitled to disability benefits.  *Id*.  "There are two

---

[5]  As the Commissioner argues, the ALJ noted substantial evidence in the record that Colvin did not have disabling foot limitations.  AR 29-32.  Colvin's treating physician, Dr. Xiao, opined in May 2009 that Colvin had bilateral plantar fasciitis and bilateral Achilles tendonitis, and had been permanent and stationary since 2005.  AR 209-211.  Colvin's range of motion of the ankle with flexion, extension, abduction and adduction was within normal limits.  There was occasional swelling and tenderness of the foot, but no warmth or redness, and no paravertebral muscle spasms.  Sensation, reflex and motor strength were within normal limits, and straight leg raise was negative.  There was no muscular contraction detected and no atrophy.  AR 209.  Colvin took pain medication as needed, which relieved pain "to some degree."  AR 210.  Dr. Moazzaz found that the bilateral ankles and feet had no scars, no gross deformity, no soft tissue swelling, no warmth, and full pain-free range of motion.  There was mild tenderness to palpation over the Achilles insertion posteriorly with no surrounding swelling, erythema, or drainage, and Thompson's Test was negative bilaterally.  AR 214.  Dr. Popov found mild tenderness in the ankles with no joint deformities, no swelling and no evidence of effusion or erythema.  Range of motion was intact with dorsiflexion and plantar flexion within normal limits.  AR 235.  Dr. Sourehnissani found no swelling or erythema in the ankles, with normal range of motion.  There was some discomfort on the plantar surfaces of the feet.  Deep tendon reflexes of the ankle were normal.  AR 536.

[6]  The DOT raises a rebuttable presumption as to job classification.  *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *Id.*

"[A]n ALJ may [not] rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the Dictionary of Occupational Titles." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (footnote omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1234 (9th Cir. 2009). Social Security Ruling ("SSR") 00-4p[7] requires the ALJ to "first determine whether a conflict exists" between the DOT and the VE's testimony, and "then determine whether the VE's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT]." *Massachi*, 486 F.3d at 1153.

In evaluating the VE's explanation for the conflict, "an ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Johnson*, 60 F.3d at 1435. The ALJ's explanation is satisfactory if the ALJ's factual findings support a deviation from the DOT and "persuasive testimony of available job categories" matches "the specific requirements of a designated occupation with the specific abilities and limitations of the claimant." *Id.* at 1435. Remand may not be necessary if the procedural error is harmless, i.e., when there is no conflict or if the VE had provided sufficient support for her conclusion so as to justify any potential conflicts. *Massachi*, 486 F.3d at 1154 n.19.

---

[7]  Social Security rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

1    Here, the VE testified that her opinion was consistent with the DOT. AR 56. At
2    step five, the ALJ relied on the VE's testimony and found there were jobs that exist in
3    significant numbers in the national economy that Colvin could perform, such as a night
4    cleaner, DOT No. 381.687-018, laundry laborer, DOT No. 361.685-018, storage facility
5    clerk, DOT No. 295.367-026, and survey worker, DOT No. 205.367-054. AR 34, 56.

Colvin argues that, based on her attorney's hypothetical question to the VE, the VE's testimony regarding the storage facility clerk and survey worker positions conflicts with the DOT. Colvin's attorney asked whether the enumerated jobs would be available if Colvin were limited to occasional (no more than one third of the day) pushing and pulling. The VE responded: "Would be able to do the light work. Survey worker and storage facility clerk do not require -- actually I don't think they require any pushing or pulling at all." AR 57. Colvin contends there is a conflict because the storage facility clerk and survey worker jobs require frequent reaching and handling. According to Colvin, the VE in the prior hearing indicated that pushing and pulling is not part of the DOT, but that reaching and handling and fingering requirements are those characteristics that are most closely aligned.[8]

The ALJ 's RFC determination did not include a limitation to occasional pushing and pulling. AR 27. The ALJ's hypothetical to the VE contained all the limitations she found credible and supported by substantial evidence. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005) (ALJ may rely on VE testimony given in response to hypothetical question that contains all limitations the ALJ found credible and supported by substantial evidence). An ALJ is not required to include limitations that are not in his findings. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). As discussed above, substantial evidence

---

[8] The VE in the prior hearing actually testified that based on personal interpretation and knowledge, "we don't really have pushing and pulling" as part of the DOT, but "most likely the reaching would be involved with pushing and pulling." AR 79.

supports the ALJ's decision to reject push/pull limitations due to carpal tunnel syndrome.[9]  The ALJ did not err.

In reply, Colvin argues that the "low stress aspect of the ALJ's RFC" conflicts with the DOT, which "does not specifically address 'low stress.'"  JS 17-18.  The Ninth Circuit has not addressed the question of whether an apparent conflict with the DOT arises when the DOT is silent as to a particular mental or physical requirement.  This court declines to find an "apparent" conflict when the DOT is silent about a particular mental or physical requirement.

The ALJ's step five determination is supported by substantial evidence.  The ALJ properly relied on the VE's testimony.  The ALJ did not err.

**F.   Credibility**

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).

"Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."  *Lingenfelter*, 504 F.3d at 1036 (citation and quotation marks omitted).  "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints[.]'"  *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).

---

[9]   The Commissioner argues that any error would be harmless because the night cleaner and laundry laborer jobs would remain even if Colvin were limited to occasional pushing and pulling.

11

In weighing credibility, the ALJ may consider factors including: the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation." *Bunnell*, 947 F.2d at 346 (citing SSR 88-13) (quotation marks omitted). The ALJ may consider: (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies between a claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. *Thomas*, 278 F.3d at 958-59.

Colvin testified that her plantar fasciitis, tendonitis, sciatica, carpal tunnel syndrome, nerve damage, arthritis, diabetes, high blood pressure, and chronic depression have gotten worse since her first hearing in August 2011, and she now has fibromyalgia. She testified that she cannot lift and do the activities that she used to do. AR 50. She takes a cane with her "just in case" because she has fallen and her balance is "off." AR 51. Her medications cause blurred vision, dizziness, numbness and tingling. She also has sciatica. AR 51-52. She sometimes has to take "two days off just to recuperate from the, too much walking, sitting, and standing." AR 52. She can sit or stand in one position for about five or ten minutes, and can walk a couple of blocks before she has pain. *Id.* She usually spends her day doing "nothing," but goes grocery shopping and walking to alleviate some of the pain. AR 54.

The ALJ found that Colvin's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible. AR 28. The ALJ relied primarily on three reasons: (1) Colvin did not comply with her treatment regimen; (2) the objective medical evidence did not support the alleged severity of her symptoms; and (3) Colvin had a history of untruthfulness. AR 27-29.

1. Non-Compliance with Treatment

"[U]nexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" is a relevant factor in weighing a plaintiff's credibility. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The ALJ observed that a March 2011 treatment note indicated Colvin had uncontrolled hypertension and diabetes, but had been off medication for two years. AR 28, 267. Colvin was treated and restarted with medication, was instructed to continue her medications, and was found to be in good condition on discharge. AR 28-29, 268. A July 2011 treatment note indicated Colvin had been out of medication for "months," and her blood pressure was measured at 240/120. AR 29, 279-80. An August 11, 2011 treatment note indicated Colvin had been off medication for five or six months. AR 29, 293. An August 18, 2011 treatment note indicated Colvin was not compliant with medication. AR 29, 326. Colvin reported on August 18 and 19, 2011, that she took all of her medication. AR 414, 419.

In reply, Colvin argues that the ALJ did not state that "if plaintiff's pain and complaints were as serious as she said they were, that she would have taken her medication as prescribed," and that the ALJ did not cite 20 C.F.R. § 404.1530. JS 24. The ALJ discussed Colvin's non-compliance with treatment in three paragraphs immediately following his statement finding Colvin "not entirely credible for the reasons explained in this decision." AR 28. The ALJ relied on non-compliance with treatment as a factor in his credibility determination, and reasonably interpreted the evidence as showing Colvin was not compliant with treatment.

2. Objective Medical Evidence

Although lack of objective medical evidence supporting the degree of limitation "cannot form the sole basis for discounting pain testimony," it is a factor that an ALJ may consider in assessing credibility. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The ALJ thoroughly discussed the medical evidence in the record, and found that the clinical signs and examinations did not support Colvin's allegations. AR 25-33.

Colvin cites evidence that she presented with neck and head pain, and suicidal ideation in February 2011, was admitted to the hospital in March 2011 with a hypertensive emergency and an acute kidney injury and encephalopathy, was admitted to St. Frances Medical Center in August 2011 with highly elevated blood pressure and suicidal ideation, was seen in June 2012 for body aches that were worsening, and was noted to have depression and stress, chronic kidney disease, stage III, and blood pressure of 225/115.[10]  AR 274, 319-20, 518-20, 524, 575.  The ALJ discussed the evidence cited by Colvin, and additionally discussed the findings of the medical examiners.  AR 28-33.  The ALJ properly considered the objective medical evidence in the record.

### 3. History of Untruthfulness

The ALJ noted that Colvin was under investigation for "fraudulent acts" at her prior employment at the post office, and was denied additional services due to omitted information she "forgot" to share with other agencies.  AR 26-27, 473, 493.  Colvin argues the ALJ's findings were unsupported because the ALJ did not provide a citation to "any evidence that reflects she was under investigation," and "it is unclear what the additional resources were and what information was omitted."  JS 19-20.  Colvin argues that when she had the opportunity to address the social worker's concerns, the social worker linked her to additional services.  AR 470.

The ALJ relied on the progress notes of Colvin's social worker, which indicated Colvin owned property and was currently having legal problems with her current tenants, Colvin was under investigation due to "fraudulent" acts at her prior employment with the post office, and Colvin was denied access to additional resources based on omitted information that she "forgot" to share with agencies.  AR 473.  The progress notes further indicate Colvin misreported that she was "low income" and homeless, and

---

[10] The June 2012 date appears to be incorrect based on the citations provided by Colvin.  The correct date appears to be February 11, 2013, when Colvin was, again, noted as not having had her medication for months.  AR 572.

failed to disclose she owned rental properties or a pending fraud case against her. AR 470. When confronted by the social worker, Colvin stated that she considered herself to be "low income," as she was not able to provide for herself like she used to, and that due to the multiple stressors in her life, she forgot to provide information that was required of her, but she was not lying. *Id.* Because an ALJ may consider "ordinary techniques of credibility evaluation," the court concludes it was appropriate for the ALJ to consider the progress notes in assessing Colvin's credibility.

The ALJ provided clear and convincing reasons, supported by substantial evidence, for finding Colvin's statements not entirely credible. "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas*, 278 F.3d at 959 (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)). The ALJ did not err.

## IV.

## **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: July 16, 2015

ALICIA G. ROSENBERG
United States Magistrate Judge